## THE COLUMBIA.

## UNITED STATES v. THE COLUMBIA.

*(Circuit Court of Appeals, Second Circuit. February 16, 1892.)*

PENALTIES—FORFEITURES—PASSENGER ACT—OVERLOADING—SECTION 4465, REV. ST.
 On the evidence the court found that the steamboat Columbia, libeled by the government for carrying passengers in excess of the number stated in her certificate of inspection, and held in fault by the district court, did not, on the trip in question, carry more passengers than her certificate allowed, and that the decree of the district court should therefore be reversed, and the libel dismissed. 39 Fed. Rep. 617, reversed.

In Admiralty. Libel by the United States against the steamboat Columbia for violation of section 4465, Rev. St. The Columbia was allowed to carry 3,000 passengers, and no more. The libel alleged that on one trip she had carried 677 in excess of the number stated in her certificate of inspection. The district court decreed for the libelant, (39 Fed. Rep. 617;) and the claimant appealed to the circuit court for the eastern district of New York, which affirmed *pro forma* the decree of the district court, and claimant appealed to this court. Reversed.

*Blair & Rudd,* (*Benjamin F. Blair,* of counsel,) for appellant.

*Jesse Johnson,* U. S. Dist. Atty.

Before WALLACE and LACOMBE, Circuit Judges.

LACOMBE, Circuit Judge. The circumstances under which the count was made by the two passengers at Far Rockaway were such as to make absolute accuracy impossible. It did not need the testimony of the government inspectors, whom the claimant called as experts, to show that a count of a crowd moving rapidly in a mass over a wide gang plank, and moving away from the observer, could be but an approximation only. Besides errors likely to result from displacement of positions as some one turns back to return, there is the highly probable error that some will pass whom the observer does not count, and the error resulting from a consciousness of that fact on the part of the observer, and his effort, perhaps unconsciously, to correct it. Manifestly, it cannot be as accurate as a count of articles that can be handled and sorted, when that count is conducted under circumstances which admit of its being done deliberately. It appears from the evidence that the company running the Columbia had issued complimentary season tickets to the number of nearly 300. Holders of such might have been on the Columbia that day, and left no tangible evidence of their presence. But such tickets were issued almost entirely to persons in a similar line of business,— railroad men and others more or less closely affiliated in business with the company. Very few of such tickets would be shown on any one trip. It also appeared that the president or general agent of the company, the master, or purser might pass a friend on board without a ticket, and sometimes did so; but there would be very few such instan-

ces on any one trip, and the evidence does not show that there were more than four on this particular trip. It must be presumed that the passengers who presented money instead of tickets when they came aboard would subsequently get their tickets from the purser, as he testifies they did; for otherwise they would be without the coupons entitling them to a return trip. Except, then, for the very few who held season tickets or were passed as personal friends of the four officers above named, every passenger the Columbia carried that day left aboard her a tangible evidence of his presence. A count of these tickets, if deliberately and honestly made, would be plainly entitled to greater credit than the tally made by the two passengers at Far Rockaway. The count of tickets before Jewell's wharf was reached was evidently made in haste, so that the number on board might be known before the boat made her landing. Three men—the purser, assistant purser, and superintendent—bunched the tickets; and they each testify that they put 100 in each bunch, (save one, containing 14.) The superintendent and others counted the bunches, and, assuming each to contain 100, made out the number of tickets to be 2,214. Of course, this did not account for such passengers as had paid cash, but had not yet obtained their tickets from the purser. The counters at Jewell's wharf, whose enumeration was made under more favorable circumstances than the one at Far Rockaway, and which seems to have commended itself to the district judge, showed 650 to 680. This would make the total number 2,864 to 2,894. There was, however, another count made of the tickets. The purser is required to make a return to the company of each round trip, showing, not only how many passengers were carried, but what they paid and where they came from. This is not begun till after the boat has made her last landing, and all passengers are aboard. To do it the tickets must be all sorted, and counted separately, under their separate classes. The return of this round trip is in evidence, and testified to by the purser and assistant purser, who made it up. The district judge discredited this return because he found it "impossible to conclude from the purser's testimony that there is any certainty that the tickets counted by him when making his return were all the tickets that had been taken in on that day." We think he must have overlooked the evidence given by the assistant purser. It abundantly appears from the testimony that only the purser and the assistant purser took tickets from incoming passengers, and both testify positively that they turned in all the tickets they took, which were first deposited in a heap on the desk in the purser's office, and subsequently bunched. It is no doubt true, as the district judge suggests, that the officers of the boat were biased in favor of the boat, just as the complaining witnesses were biased against it by reason of the discomfort which induced their counting, and the knowledge they had when they made their complaint that they would be entitled to share in any recovery. But where the testimony of witnesses is reasonable in itself, and is given without any indication of untruthfulness, mere bias does not seem to us sufficient for concluding, as the district attorney suggests in his brief, that they deliberately retained 600 tickets,

or abstracted them from the purser's room, and then perjured themselves to hide their fraud. It is a suggestive fact that these witnesses were not cross-examined on this point. Apparently, there was nothing in the manner in which they gave their evidence to excite suspicion. A trial judge has the opportunity, which an appellate court has not, of hearing and seeing the witnesses; but in this case, for all that appears, the purser's return was discredited by the district judge because the purser's testimony, standing by itself, did not establish the fact that such return included all the tickets. As he does not refer to the very positive testimony of the assistant purser, which, when taken in connection with the purser's, does establish that fact, we must conclude that he overlooked it.

It being established that the purser and assistant had before them tickets representing all passengers on board, except the very few holding season tickets or "passed" as friends of the officers, it is only necessary to see what they did with them. The bunched tickets taken in at the different landings were kept in different places on the purser's desk. They were first counted to determine how many were taken aboard at each landing, and the result minuted on the back of the return, which is the usual custom. It was conceded on the trial that by an error 92 elevated railroad tickets were put under the heading of Jewell's wharf, instead of pier 6. Correcting this error, the back of that paper shows the number of passengers as follows:

| | |
|---|---:|
| Taken at West Twenty-Second street | 834 |
| Taken at West Tenth street | 559 |
| Taken at pier 6 | 791 |
| Taken at Jewell's wharf | 671 |
| | 2,855 |

All the tickets were also assorted and recounted under different classes, viz., those sold by the boat, the various connecting railroads, etc., with this result:

| | |
|---|---:|
| Passengers paying cash | 93 |
| Passengers having ordinary round-trip tickets | 2,529 |
| Passengers having single tickets up | 50 |
| Passengers having tickets from railroads | 326 |
| | 2,998 |

This corresponds exactly with the figures on the back of the return made before the reassortment, because the back does not contain 50 "single up" tickets which were sold by the agent at Rockaway for the return trip, nor 93 purser's tickets, representing cash. Adding these items (143) to the aggregate by landings, the result is 2,998. The evidence indicates that the passengers down, who did not return by boat, were more in number than those who boarded her at Far Rockaway for the first time to make the up trip only; and as we see no reason to assume that those who held season tickets or came aboard on "pass" exceeded 50 (the return shows there were 4 only) the return indicates that

she did not carry in excess of 3,000 passengers on the day in question. Of the two enumerations, presented respectively by the libelant and the steamboat, we are of opinion that the clear preponderance of proof is in favor of the latter. The decree is reversed, and case remanded to the circuit court with instructions to dismiss the libel.